CONDADO BEACH HOTEL COMPANY, recurrente, *v.* JUNTA DE SALARIO MÍNIMO, recurrida.

Número 109.

*Sometido:* 3 de marzo de 1953. *Resuelto:* 22 de abril de 1953.

Luis F. Sánchez Vilella, Sarah Torres Peralta y C. Morales, Jr., abogados de la recurrente; J. Gallart Mendía y Domingo Candelario, abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

La recurrente, Condado Beach Hotel Co., ha impugnado ante este tribunal, mediante el correspondiente recurso de revisión, la validez del Decreto núm. 22 promulgado por la Junta de Salario Mínimo el 6 de agosto de 1952, cuyo decreto se refiere al negocio de hoteles. Se señalan los siguientes errores:

"I. La clasificación de hoteles establecida en el Artículo IV (A) y (B) viola las disposiciones de la sección 12 de la Ley de Salario Mínimo porque concede ventajas de competencia a ciertas categorías de hoteles sobre otras categorías y además las determinaciones de hecho que sirven de base a la clasificación de los distintos hoteles en varias categorías no está sostenida por evidencia sustancial. El establecimiento de dos categorías de hoteles con salarios mínimos distintos fundada en que un grupo de hoteles tiene casino, bien operado por el mismo patrono o por patronos distintos, no tiene base alguna en los hechos probados que tuvo ante sí la Junta y además viola las disposiciones de las secciones 1, 8 y 12 de la Ley de Salario Mínimo. (Parr. V (A) (I), págs. 2 y 3, Recurso de Revisión.)

"II. La clasificación de empleados en dos categorías, es decir, los que regularmente en el curso de su trabajo reciben propinas de los huéspedes y los que no reciben propinas, establecida para los hoteles en la Clase 'A' (hoteles que tienen, bien operado por el mismo patrono, o por patronos distintos, casino o sala de juegos de azar) no se estableció para todos los demás hoteles incluídos en la Clase 'B' y en esa forma la Junta violó las disposiciones de las secciones 1, 8 y 12 de la Ley de Salario Mínimo, y estableció una distinción que no solamente es arbitraria e inconstitucional sino también ilegal porque no cumple con los fines que dispone la Ley de Salario Mínimo en su sección primera y además concede ventajas de competencia a una categoría de hoteles sobre otra. (Pág. 2, Recurso de Revisión.)

"III. La definición de los empleados que caen en la categoría de empleados que reciben propinas de los huéspedes regularmente en el curso de su trabajo no está sostenida por evidencia sustancial y es arbitraria ya que la prueba demostró que además de los mozos, ayudantes de mozos, dependientes de *bar*, camareras y botones, otras clases de empleados reciben propinas en el curso de su trabajo regularmente. (Págs. 3 y 4 del Recurso de Revisión.)

"IV. Los salarios fijados para los hoteles de la zona primera en la categoría 'A' violan las disposiciones de la Ley de Salario Mínimo al efecto de que al fijar el salario mínimo la Junta deberá tener en cuenta el coste de vida y la necesidad de los trabajadores y el salario más alto que razonablemente pueda pagar la industria siempre que no conlleve una reducción apreciable de los empleos y además viola la política pública establecida por la Ley de Salario Mínimo al efecto de que la Junta debe cuidar de no destruir las fuentes de empleo y de trabajo y debe fijar salarios tomando en consideración los costes, la situación financiera de la industria y las condiciones especiales existentes para garantizarle estabilidad económica y su natural expansión. (Parr. 5(A) (IV) pág. 4, Recurso de Revisión.)

"V. La Junta cometió error además al promulgar un salario mínimo de 36¢ para los empleados que reciben propinas en la zona primera de clasificación 'A' ya que éstos reciben una cantidad sustancial semanal en propinas suficiente para cubrir sus necesidades de vida y la Junta al ignorar este hecho actuó ilegalmente, en contra de la evidencia presentada y no tomó en consideración los requisitos establecidos por la sección 12 de la Ley de Salario Mínimo. (Párr. 5(A) (V), pág. 4, Recurso de Revisión.)

"VI. La Junta cometió error además al establecer salarios excesivamente altos porque el efecto acumulativo de éstos en adición a las otras cargas económicas que impone el decreto a través de la garantía de compensación mínima de salario semanal, vacaciones con paga acumulativa, reducidos descuentos por servicios prestados, licencia por enfermedad, etc., afectaría la estabilidad económica de la industria hotelera. (Párr. 5(A) (VI), pág. 4, Recurso de Revisión.)

"VII. La Junta recurrida cometió error al imponer una condición exigiendo a los patronos clasificados en el Grupo A del Artículo 4 del Decreto Mandatorio, que en el caso de los ayudantes de mozos y en el de las camareras deberá el patrono evi-

denciar bajo la firma del empleado o en alguna otra forma feha-
ciente, que el empleado ha recibido semanalmente la suma de
$1.60 en propinas, porque dicha condición no encuentra apoyo
en ninguna evidencia ante la Junta, e impone al patrono obliga-
ciones y deberes imposibles de cumplir. (Párr. 5(A) (VII),
págs. 4 y 5 del Recurso de Revisión.)

"VIII. La Junta recurrida cometió error al aprobar el Ar-
tículo V sobre garantía de compensación semanal mínima porque
la Junta no tiene autoridad legal para disponer dicha garantía
porque tal disposición viola los derechos constitucionales de la
recurrente y además porque tal como está redactada viola las
secciones 1, 8 y 12 de la Ley de Salario Mínimo. (Párr. B–I, II,
III, pág. 5 del Recurso de Revisión.)

"IX. La Junta recurrida erró al fijar sin evidencia alguna
que la sostenga, deducciones por servicios prestados en el Ar-
tículo VI del Decreto Mandatorio Núm. 22 cuyo importe es mucho
menor que los costos actuales de dichos servicios, viciando así
de nulidad la disposición por ser irrazonable, ilegal y porque
priva a la recurrente de su propiedad sin el debido proceso de
ley. (Párr. C, pág. 5, Recurso de Revisión.)

"X. La Junta recurrida abusó de su facultad de fijar vaca-
ciones con paga como una condición de trabajo. Habiéndole
fijado 15.208 días al año de vacaciones con paga y además licen-
cia por enfermedad con paga por igual término en condiciones
tales que esta licencia equivale a un período adicional de vaca-
ciones, la Junta ha establecido, por ser irrazonable y arbitraria,
una disposición ilegal e inconstitucional. (Párr. D, pág. 6, Re-
curso de Revisión.)

"XI. La Junta recurrida cometió error al aprobar el párrafo
C del Artículo VIII del Decreto Mandatorio Núm. 22 sobre licen-
cia por enfermedad, sin excluir los casos en que la ausencia por
enfermedad se debe a la culpa del empleado. (Párr. E–I, II,
pág. 6, Recurso de Revisión.)

"XII. El párrafo A del Artículo X del Decreto Mandatorio
Núm. 22 es inválido e ilegal porque está en contravención de lo
dispuesto en el párrafo segundo de la sección 15 de la Ley de
Salario Mínimo de Puerto Rico, ya que en la forma en que está
redactado obliga al patrono a prestar ciertos servicios a los em-
pleados a perpetuidad. (Párr. F., pág. 7, Recurso de Revisión.)"

Hemos ya discutido la gran mayoría de esos errores en el
caso de *Hilton Hotels International, Inc,. et al.* v. *Junta*, re-
suelto en el día de hoy, ante pág. 670. Nos remitimos a la opi-

nión dictada en dicho caso. Sin embargo, se plantean algunas cuestiones nuevas en este recurso, las que procederemos a discutir.

 Alega la recurrente que la aplicación del decreto 22, en todas sus partes, es confiscatoria en cuanto a ella, Condado Beach Hotel Co., ya que implica que ella no recibiría un margen razonable de beneficios. Su tesis se basa en cierto número de nóminas sometidas a este tribunal, después de haberse presentado ante nos el recurso de revisión, a los fines de la fijación de la fianza correspondiente. Cuando se fijan salarios mínimos para una industria ello se hace tomando en consideración la industria en general y no el estado económico de determinada empresa en particular. *American R. R. Co. v. Junta*, 68 D.P.R. 796, 803. Independientemente de tal regla, las nóminas que le sirven de base a la contención de la recurrente han sido sometidas por vez primera ante este tribunal, en forma colateral, y no fueron sometidas como prueba ante la Junta. No forman parte del récord de la prueba presentada ante la Junta. Sin tomar en consideración las reglas técnicas de ley, un buen ordenamiento administrativo y judicial aconseja que en aquellos casos en que una industria o negocio en general considera que un decreto es confiscatorio y le priva de un beneficio razonable, tal negocio o industria debe someter su prueba, y los datos relevantes ante la Junta, en primera instancia, y no ante este tribunal, en el curso de un procedimiento de revisión, al fin de que la Junta pueda aquilatar esa prueba y esos datos y tome las medidas pertinentes.

Se demostró por la prueba presentada en este caso que la recurrente no es la dueña del casino y de la sala de juegos de azar que están localizados en el Hotel Condado. Otra entidad independiente es la dueña. Si la norma que hubiera seguido la Junta hubiese sido la de beneficios económicos derivados directamente de la operación en sí del casino, la recurrente tendría razón al impugnar la clasificación en cuanto a ella, que no recibe beneficios económicos directos del casino. Pero

la Junta siguió otra norma, que hemos considerado racional, en el caso de *Hilton Hotels*, al efecto de que el establecimiento de una categoría separada en cuanto a hoteles con casino se basa, no en los beneficios del casino en sí, sino en el hecho de que la existencia del casino implica un mayor movimiento de turistas y huéspedes en el hotel, y un mayor movimiento económico en el hotel en general. O sea, la recurrente en este caso obtendría mayores beneficios indirectos por el hecho en sí de que hay un casino en el hotel.

■■ El noveno error señalado por la recurrente envuelve su alegación al efecto de que la Junta erró al fijar, sin evidencia alguna que la sostenga, deducciones por servicios prestados, en el artículo 6 del decreto, cuyo importe, alega la recurrente, es mucho menor que los costos actuales de dichos servicios, "viciando así de nulidad la disposición por ser irrazonable, ilegal y porque priva a la recurrente de su propiedad sin el debido proceso de ley."

Los apartados (*a*) y (*c*) del artículo 6 del decreto disponen lo siguiente:

"(*a*) A todo empleado a quien se le suministre desayuno, almuerzo, comida o dormitorio podrá descontársele de su salario semanal por cada uno de tales servicios que reciba una cantidad no mayor de la que se especifica a continuación:

 (1) Por cada desayuno............. 10¢
 (2) Por cada almuerzo............. 25¢
 (3) Por cada comida............... 25¢
 (4) Por dormitorio............... 15¢ al día.

"(*c*) Ningún empleado estará obligado a aceptar, ni ningún patrono estará obligado a suministrar, en su totalidad o en parte, los servicios enumerados en el apartado A de este Artículo."

La sección 12 de la Ley de Salario Mínimo dispone, en parte, que, salvo disposición en contrario contenida en un decreto, ningún patrono podrá exigir a un trabajador, o deducirle, suma alguna del salario por concepto de comidas servidas o servicios suministrados en el curso ο duración del em-

pleo, ya por el propio patrono o por otra persona o entidad. La sección 30 define "salario" como incluyendo toda clase de compensación, sea en dinero o en facilidades o servicios o combinación de cualesquiera de ellos, "pero no incluirá sino dinero, cuando se trate del salario mínimo prescrito bajo las disposiciones de esta Ley, a menos que por decreto o reglamento de la Junta se disponga o autorice otra cosa."

Bajo las disposiciones citadas, como regla general, un patrono no puede deducir del salario de sus empleados las comidas suministradas a ellos, pero un decreto puede autorizarlo a así hacerlo. Además, tales comidas pueden ser consideradas como parte del salario, si así lo dispone un decreto. Evidentemente, el propósito legislativo es el de impedir evasiones indirectas de la obligación de pagar un salario mínimo mediante deducciones artificiales de valores económicos inflados en cuanto a servicios y comidas. Tal dilema se puede resolver mediante reglamentos y decretos adecuados que permitan tales deducciones a base del coste razonable de tales servicios y comidas. (¹)

Como hemos visto, el decreto permite deducciones por comidas y señala ciertos límites máximos en cuanto al valor económico de tales deducciones. Esos valores corresponden

---

(¹) Precisamente, la sección 3 (*m*) de la ley federal de Normas Razonables de Trabajo determina que el término "salario" incluye el coste razonable, como lo fije el Administrador de comidas, alojamiento y otras facilidades, si tales facilidades han sido suministradas habitualmente a los empleados por el patrono. El coste razonable de las comidas es parte del salario, bajo esa ley. *Southern Pac. Co.* v. *Joint Council Dining Car Employees*, 165 F.2d 26; *Walling* v. *Alaska Pac. Consol. Min. Co.*, 152 F.2d 812; *Williams* v. *Jacksonville Terminal Co.*, 315 U. S. 386. El salario se puede pagar en dinero y en comidas. *Shelton* v. *Missouri-Kansas-Texas R. Co.*, 74 F. Supp. 961. La disposición al efecto de que el salario puede incluir el coste razonable de las comidas es permisible, y no obligatorio para el patrono, pero si el patrono se decide a deducir el coste de las comidas, ese coste debe ser razonable, según lo fije el Administrador y hasta tanto el Administrador haga tal fijación, el patrono está obligado a pagar el salario en dinero. *Morgan* v. *Atlantic Coast Line R. Co.*, 32 F. Supp. 617.

a una fijación del coste, para los patronos, de tales comidas. Pero del récord y del decreto se desprende que la Junta aplicó a los hoteles, en tal concepto, ciertas estadísticas en cuanto al coste de comidas en hospitales, en el año 1952. No hubo prueba alguna en cuanto al coste de comidas en hoteles. Sería posible que el coste de comidas para hospitales corresponda al de los hoteles. Pero eso es hipotético. También es posible que existan otros factores que determinen algunas diferencias en ambas situaciones. De todos modos, no hay base racional alguna para aplicar a hoteles los datos que son reales en cuanto a hospitales, pero que pueden no ser reales en cuanto a hoteles. Por lo tanto, nos vemos obligados a resolver que la fijación del coste razonable de comidas como límite máximo a deducciones del salario en tal concepto no está sostenida por prueba adecuada y razonable alguna, y es arbitraria.

Se alega, sin embargo, por la Junta que, aún asumiendo que el coste real para la recurrente de las comidas sea mayor que el señalado en el decreto, ello no implica la invalidez de tal disposición, ya que la situación económica de la recurrente no queda afectada. La Junta determinó expresamente (Apéndices 1 y 2 del decreto, et seq., especialmente el 2 en cuanto a la recurrente en particular), que al reducir el valor fijado de las comidas del salario mínimo fijado previamente (36 y 40 centavos), la suma remanente representaba ser, sustancialmente y salvo otros factores que no vienen al caso, el impacto económico del decreto sobre la recurrente, en cuanto a sus gastos totales bajo el decreto. Se alega que, de permitirse una deducción mayor, por ser el coste de las comidas mayor al fijado en el decreto, ello implica que los gastos de la recurrente serían aún menores, llegándose entonces a una suma remanente menor que la que la recurrente puede sostener como gastos, habiendo entonces margen para aumentar aún más los salarios en dinero, correspondiendo al aumento en el coste de las comidas, para que el patrono quede entonces en la misma situación anterior en cuanto a gastos

totales que el patrono pueda razonablemente sufragar.([2])
Pero, de todos modos, de ser mayor el coste de las comidas
que el fijado en el decreto, y en ausencia de un reajuste total,
al patrono se le obligaría a asumir la carga del coste en exceso
de las comidas, sin que estemos en condiciones de conocer
hasta cuánto llega ese exceso. Sea ello como fuere, la Junta
no siguió una base racional para su determinación.([3])

■ Expone la Junta que la recurrente no puede impug-
nar la disposición en cuanto a deducciones por comidas ya que
el artículo 6(c) del decreto establece que ningún empleado
estará obligado a aceptar, ni ningún patrono estará obligado
a suministrar, en su totalidad o en parte, los servicios de co-
midas y dormitorios, señalados en el artículo 6(a) y que, en
vista de que dicho artículo 6(a) no es obligatorio para los
patronos, ellos no pueden impugnar su validez. De todos
modos, se señala una alternativa para el patrono en cuanto
a deducir comidas y dormitorios a cierto coste siendo esa al-
ternativa irrazonable y arbitraria, y, por lo tanto, ella debe
ser eliminada del decreto o modificada por la Junta con los
reajustes correspondientes en cuanto a salarios. Considera-
dos conjuntamente, los apartados (a) y (c) del decreto deter-

---

([2]) Un ejemplo a base de números arbitrarios ilustraría la situación.
Asumiendo que un salario mínimo de un empleado llegue a $19 semanales
y que el decreto fije en $5 el coste de las comidas, al deducirse ese coste
del salario quedaría un remanente de salario "real" de $14. La Junta de-
terminó, ajustándonos a esos números, por ejemplo, que la recurrente po-
día pagar $14 semanales y, al mismo tiempo, recibir un beneficio razonable.
Si realmente el coste de las comidas es de $2 adicionales y se permitiera,
por lo tanto, una deducción de $7, el patrono estaría pagando un total
de $12 semanales, pudiendo pagar $14. Ello implicaría que el salario de
$19 podría ser aumentado a $21, y las deducciones a $7, y el remanente
sería el mismo, $14, en forma compatible con la capacidad económica de
la empresa. Pero, en ausencia de tal reajuste, la recurrente estaría asu-
miendo la carga del exceso de $2 en el valor de las comidas.

([3]) En el caso de vacaciones y licencias por enfermedad, la Junta si-
guió un criterio objetivo y exacto en cuanto al impacto económico de pagar
cierto salario durante cierto número de días y de semanas. Incidental-
mente, en *Escudero* v. *Junta*, 66 D.P.R. 594, se resolvió que ciertas cantida-
des de leche podían deducirse del salario. Pero había prueba exacta en
cuanto al precio real de la leche, mientras que en el caso de autos no hay
prueba exacta en cuanto al coste real de las comidas en los hoteles.

minan que el patrono no está obligado a'suministrar servicios de comidas y dormitorio, pero, si los suministra, debe hacerlo a base de los tipos de coste fijados en el apartado (a). Esos tipos de coste no tienen una base racional en la prueba y, por lo tanto, esa alternativa fijada en el apartado (a) no debe prevalecer y no debe permanecer en el decreto. Ello conlleva, naturalmente, la invalidez del apartado (b) del artículo (6), que complementa el apartado (a), y del apartado (c), por ser innecesario, ya que deja al patrono en libertad de cumplir o no con el apartado (a).

■ No obstante ello, la nulidad del artículo 6 del decreto no conlleva la invalidez de la totalidad del decreto o de las otras disposiciones del decreto. El apartado F del artículo 10 del decreto determina que una declaración de nulidad de una parte del decreto no implica la nulidad de las otras partes. La disposición en cuanto a deducciones por comidas y dormitorio es separable de las otras partes del decreto, y las otras partes no dependen de, ni están entrelazadas con, esa disposición que estamos anulando. Queda en pie, por ejemplo, la disposición en cuanto al salario mínimo en sí (36 y 40 centavos por hora en cuanto a la recurrente) sin que la recurrente pueda hacer deducciones de clase alguna de ese salario en cuanto a comidas y dormitorio, a tono con la sección 12 de la ley. Ahora bien, al anular el artículo 6 del decreto, creemos que sería conveniente que la Junta verifique los estudios correspondientes en cuanto al coste de comidas y dormitorios en los hoteles, y determine un sistema de deducciones a base de costes razonables con los correspondientes reajustes en los salarios a tono con la situación económica de los hoteles, para que así queden debidamente salvaguardados los derechos de los trabajadores y de los patronos.

■ El duodécimo error señalado por la recurrente es el siguiente:

"XII. El párrafo A del artículo X del Decreto Mandatorio núm. 22 es inválido e ilegal porque está en contravención de lo

dispuesto en el párrafo segundo de la sección 15 de la Ley de Salario Mínimo de Puerto Rico, ya que en la forma en que está redactado obliga al patrono a prestar ciertos servicios a los empleados a perpetuidad. (Párr. F, pág. 7, Recurso de Revisión)."

El párrafo A del artículo X del decreto lee así:

"No sufrirán rebaja alguna en sus salarios con motivo de la aprobación de este decreto aquellos empleados que a la fecha en que el mismo se aprueba estén percibiendo salarios mayores que los mínimos aquí fijados. Tampoco podrá ningún patrono cobrar o deducir suma alguna del salario de ningún empleado por concepto de cualesquiera servicios recibidos por el empleado en esa fecha en adición a los enumerados en el Artículo VI, ni podrá dejar de suministrárselos en igual forma con motivo de la aprobación de este decreto."

La sección 15 de la Ley de Salario Mínimo dispone que no se rebajarán los salarios recibidos en virtud de convenios colectivos, laudos arbitrales u otros contratos de trabajo vigentes.

En cuanto a aquella parte del artículo 10 que se refiere a servicios, lo que se indica en cuanto a que el patrono no podrá cobrar o deducir suma alguna del salario de ningún empleado por concepto de cualesquiera servicios en adición a los enumerados en el artículo 6, aún quedando anulado el artículo 6, queda en pie la sección 12 de la ley básica, que prohibe tales deducciones excepto en forma autorizada por la Junta. Por lo tanto, la parte señalada del artículo 10 del decreto es congruente con la sección 12. En cuanto a servicios suministrados antes del decreto, tal artículo debe ser interpretado en tal forma que su aplicación se limite a servicios suministrados bajo un contrato de trabajo vigente, de acuerdo con los términos de ese contrato.

*Por los fundamentos expuestos en esta opinión, debe anularse el artículo 6 del Decreto Mandatorio núm. 22, aprobado el 6 de agosto de 1952, y debe decretarse la validez de la totalidad de las demás disposiciones de dicho decreto.*